**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ILLINOIS NATIONAL INSURANCE**
**COMPANY,**

                              **Plaintiff,**           **05-CV-1260**
            **vs.**                                    **(NAM/DRH)**

**BANC ONE ACCEPTANCE CORPORATION,**

                              **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

Hodgson Russ LLP                          Kevin D. Szczepanski, Esq.
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
_Attorney for Plaintiff_

Underberg & Kessler LLP                   Paul V. Nunes, Esq.
300 Bausch & Lomb Place
Rochester, New York 14604
_Attorney for Defendant_

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

        Plaintiff Illinois National Insurance Company ("Illinois National" or "plaintiff")

commenced this action seeking judgment pursuant to 28 U.S.C. § 2201 declaring that under the

terms of Illinois National Commercial Umbrella Policy No. BE 8714362 ("the policy") plaintiff

has no duty to defend or indemnify defendant Banc One Acceptance Corporation ("Banc One"

or "defendant") in connection with an underlying personal injury action pending in the Supreme

Court for the State of New York.  (Dkt. No. 1).

Presently before the Court are three motions:  (1) defendant's motion (Dkt. No. 17) for a transfer of venue to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a)[1]; (2) plaintiff's cross-motion (Dkt. No. 24) pursuant to Fed. R. Civ. P. 56(c) seeking an award of summary judgment on the first and second claims in its complaint; and (3) defendant's cross-motion (Dkt. No. 35) for summary judgment.[2]

## FACTUAL BACKGROUND

The following facts are undisputed.[3]  Plaintiff is an Illinois corporation.  Defendant is an Ohio corporation with its principle place of business in Ohio.  Defendant is registered to do business in New York.

### I.    Illinois National Policy

In August 2001, Aon Risk Specialists, Inc. ("Aon"), on defendant's behalf, submitted an application for an excess liability policy to American Home Assurance Company ("American Home").  At the relevant period,  Douglas Garfinkel, the vice president of Aon (located in Illinois), was involved in the procurement of the policy for defendant.  At the relevant period, American Home was responsible for underwriting and issuing policies for member insurance companies of American International Group ("AIG") including plaintiff.  Defendant's application was received by Christopher R.M. Sinden at American Home's office in New

---

[1] Counsel for defendant has submitted the within motion on behalf of "Defendant J.P. Morgan Chase & Co. as successor in merger and present-day owner of Banc One Acceptance Corporation (collectively "Bank One")".  Bank One corporation was successor-in-merger of First Chicago National Bank and Banc One.

[2] Defendant did not file a formal cross motion seeking summary judgment.  This issue is discussed *infra*.

[3] The facts recited herein are drawn from Plaintiff's Statement of Undisputed Material Facts pursuant to Local Rule 7.1(a)(3); Defendant's Response to Plaintiff's Statement of Undisputed Material Facts; Declaration of Warren W. McCann; Declaration of Christopher R.M. Sinden; Affidavit of Janice Richards; Affidavit of Mildred R. Jackson; Declaration of Douglas Garfinkel; Declaration of Michael R. Becker; and Affidavit of Stephen T. Helmer; the pleadings; and exhibits to plaintiff's motion for summary judgment.

York.[4]  Mr. Sinden was the lead underwriter for the policy.   Mr. Garfinkel and Mr. Sinden negotiated the terms and conditions of the policy.[5]   Robert Lund, an AIG client service representative, was also involved in the negotiations.  At the relevant period, Mr. Lund allegedly resided and worked in Illinois.[6]

In October 2001, plaintiff issued a Commercial Umbrella Policy to defendant for the period from October 2, 2001 to April 2, 2003 (the "policy").  Paragraph F of Section VI. of the Policy states:

> F.      Duties in the Event of an Occurrence, Claim, or Suit:
>
> 1.      You must see to it that we are notified as soon as practicable of an Occurrence which may result in a claim under this policy.  To the extent possible, notice should include:
>    a.      how, when, and where the Occurrence took place;
>    b.      the names and addresses of any injured persons and witnesses; and
>    c.      the nature and location of any injury or damage arising out of the Occurrence.
>
> 2.      If a claim is made or suit is brought against any Insured that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.
>
> 3.      You and any other involved Insured must:
>
>    a.      Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;
>    b.      authorize us to obtain records and other information;
>    c.      cooperate with us in the investigation, settlement or defense of the claim or suit; and

---

[4] The application is not part of the record herein.

[5] It is undisputed that one meeting was held in New York regarding the application.  However, the parties do not agree on when the meeting took place or who was present at the meeting.

[6] The record does not contain an affidavit from Mr. Lund.

3

d.      assist us, upon our request, in the enforcement of any right
against any person or organization which may be liable to the
Insured because of injury or damages to which this insurance
may also apply.

The policy was issued from American Home's office in New York.  The cover page of the

policy lists Illinois National's company address as 500 West Madison Street, Chicago, Illinois

and the executive office address as 70 Pine Street, New York, New York.

## II.      Underlying Action

On December 13, 2002, Robert Hoadley ("Hoadley"), a New York resident, was

involved in a motor vehicle accident in Owasco, New York.  Mr. Hoadley was a passenger in a

1998 Chrysler Neon operated by Gary M. Clark.  The subject vehicle was leased to Thomas C.

Blair and Bonny J. Blair by Fox Imports, Inc, d/b/a Fox Toyota Subaru ("Fox").  The lease was

subsequently assigned to defendant.

On February 23, 2004, Hoadley commenced an action in New York Supreme Court,

Cayuga County.  The action is entitled *Robert M. Hoadley v. Banc One Acceptance*

*Corporation, Thomas C. Blair and Bonny J. Blair and Gary M. Clark* ("Hoadley action").

Hoadley alleged that Mr. Clark lost control of the vehicle while attempting to effectuate a left

turn causing the vehicle to leave the roadway, strike several trees and turn over.

In March 2004, defendant received a copy of the Summons and Complaint in the

Hoadley action.  Upon receipt of the Summons and Complaint, defendant notified its claims

administrator and insurance consultant, Paige-Ruane, Inc. ("Paige-Ruane").[7]  On March 18,

2004, Paige-Ruane forwarded the Summons and Complaint to State Farm Mutual Automobile

---

[7] The record does not reflect the exact date defendant notified Paige-Ruane of the underlying lawsuit.

4

Insurance Company ("State Farm").[8]  Paige-Ruane requested that State Farm appoint separate counsel to represent defendant.  The law firm of Mackenzie Hughes, LLP ("Mackenzie Hughes"), located in Syracuse, New York, was retained to represent defendant in the underlying lawsuit.  Defendant also retained the law firm of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP ("Wilson Elser"), located White Plains, New York, to monitor the underlying action.

In June 2004, after a dispute regarding ownership of the Blair vehicle, Hoadley moved for summary judgment.  Defendant cross moved for summary judgment arguing that the lease agreement was a "secured transaction" and therefore, defendant was not the true owner of the vehicle.[9]  On August 16, 2004, the Honorable Peter J. Corning granted defendant's motion for summary judgment and dismissed Hoadley's complaint as against Banc One.  The court held that defendant did not have a possessory interest in the vehicle and that a party who holds only a security interest in a vehicle cannot be held vicariously liable.[10]  On August 31, 2004, Hoadley served a verified bill of particulars and discovery responses upon defense counsel alleging personal injuries as a result of the accident.  Plaintiff's alleged injuries included spinal cord injuries and vertebral fractures that resulted in tetraplegia and confinement to a wheelchair.  In September 2004, Hoadley's counsel filed a Notice of Appeal.  In March 2005, the Appellate Division, Fourth Department overturned the Order of the Supreme Court and reinstated

---

[8] At the time of the accident, the Blairs were insured with State Farm.  The policy is discussed *infra*.

[9] The parties' moving papers are not part of the record herein.

[10] Judge Corning's decision/order is not part of the record herein.

Hoadley's complaint against defendant.[11]   On April 25, 2005, the Order was served upon Mackenzie Hughes.

On June 7, 2005, Mildred R. Jackson, Senior Claims Representative for JP Morgan Chase, forwarded a letter to AIG Domestic Claims, Inc.  At the relevant time period, AIG Domestic Claims, Inc. was a claims administrator for plaintiff.  The correspondence was sent from Ms. Jackson's office in Illinois to AIG's office in New York.  Ms. Jackson "notif[ied] AIG of an automobile accident that took place on December 13, 2002" and enclosed a copy of the Summons and Complaint in the action entitled *Hoadley v. Banc One*, *et. al.*

On July 12, 2005, Tracey Kelley, an employee of AIG Domestic Claims, Inc., forwarded a letter addressed to "Janice K. Richards, Bank One Corporation" advising that plaintiff would deny coverage based upon defendant's late notice of the alleged accident, claim and suit.  The correspondence was sent from AIG's office in New York to Ms. Richard's office in Illinois.

**III.    Other Relevant Insurance Policies**

**A.    State Farm Policy**

The Blairs were insured with State Farm Mutual Automobile Insurance Company ("State Farm") under Policy No. 0001-0160-52 with a primary limit of $100,000 for each occurrence.   Defendant was an additional insured under the State Farm policy.

**B.    Sirius Policy**

Banc One was insured under Sirius America Insurance Company Policy No. 0404-10372 (the "Sirius Policy") for the period of October 2, 2002 until April 2, 2003 with primary

_____

[11] The Notice of Appeal, appellate briefs and decision/order of the Appellate Division are not part of the record herein.

limits of $100,000 for each occurrence and an excess limit of $1,000,000 for each occurrence.

The Sirius Policy provided that the excess limit of $1,000,000 was reduced by the greater of:

1.    Bodily Injury Limit of Liability
      $100,000 each person
      $300,000 each accident

      Property Damage Limit of Liability
      $50,000 each accident

      or

2.    The aggregate amount of all valid and collectible insurance available to
      the Named Insured whether primary, excess, contingent or on any other
      basis.

## IV.    Complaint in the Instant Action

In the complaint herein, plaintiff claims as follows.[12]  Plaintiff issued to defendant, the

named insured, a Commercial Umbrella Insurance Policy, No. 8714362, for the period of

October 2, 2001 to April 2, 2003 ("the policy").  Defendant leased an automobile to Thomas C.

and Bonnie J. Blair.  On February 23, 2004, a lawsuit was filed in New York Supreme Court,

Cayuga County, *Robert M. Hoadley v. Banc One Acceptance Corporation, Thomas C. Blair and

Bonny J. Blair and Gary M. Clark*, *Index No. 04-0145* with defendant receiving the complaint

shortly afterwards.  On June 6, 2005, defendant notified plaintiff of the accident and the

Hoadley Action.

Plaintiff claims that defendant's failure to provide timely notice of the alleged accident

and the Hoadley action until nearly 30 months after the accident and 16 months after service of

the Hoadley action constituted a breach of the policy's notice of occurrence and notice of suit

---

[12] Plaintiff filed the complaint on October 4, 2005.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

provisions.  As a result, plaintiff seeks a declaratory judgment stating that plaintiff has no duty to defend or indemnify defendant for any sum it may become legally obligated to pay as damages in the underlying action.[13]

## DISCUSSION

### I.    Motion to Change Venue

Defendant argues that the venue of this action should be transferred to the United States District Court of the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).  Defendant contends that a transfer to Illinois will promote convenience and fairness.  Plaintiff claims defendant has not met the "heavy burden of proof" required for a change of venue.  Specifically, plaintiff claims that defendant has failed to prove that plaintiff could have originally brought this action in the Northern District of Illinois.   Moreover, plaintiff argues that defendant failed to establish that the balance of convenience favors a transfer to the proposed transferee district.

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought".  *Oparaji v. New York City Dept. of Educ.*, 172 F. App'x. 352, 354 (2d Cir. 2006).  In applying this standard, the court must determine: (1)  whether the action sought to be transferred is one that "might have been brought" in the transferee court; and (2) whether, considering the "convenience of parties and witnesses" and the interest of justice, a transfer is appropriate.  *See Oriska Ins. Co. v. Brown & Brown of Texas, Inc.*, 2005 WL 894912, at *4 (N.D.N.Y. 2005).  The burden of establishing that there should be a change of forum under § 1404(a) is on the defendant-movant.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v.*

---

[13] Plaintiff alleges a third cause of action for "[f]ailure to maintain underlying insurance; necessity for exhaustion of retained limit".  However, plaintiff has not sought summary judgment on that cause of action.

*Mason, Perrin & Kanovsky*, 709 F.Supp. 411, 417 (S.D.N.Y. 1989).  The plaintiff's choice of forum should not be disturbed unless the balance of factors strongly favors the defendant.  *Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 508 (1947).  The decision to grant or deny a motion to transfer is entirely within the discretion of the trial judge.  *Carlton Int'l., PLC v. Am. Concord Techage, Inc.*, 1995 WL 450274, at *4 (S.D.N.Y. 1995).

## A.    "Might Have Been Brought"

Plaintiff contends that the action could not have originally been brought in Illinois.  Specifically, plaintiff argues that Illinois law requires that an injured party be named in any declaratory judgment action brought by an insurer seeking to void coverage.  Thus, plaintiff claims that the action could not have been brought in the Northern District of Illinois because the underlying plaintiff, Hoadley, would be a necessary party.  Plaintiff alleges that Hoadley is a New York resident and not subject to personal jurisdiction in Illinois.[14]

An action might have been brought in another forum if, at the time the action was originally filed, "the transferee forum would have had personal jurisdiction over the defendants ... and if venue properly lies there".  *G. Angel Ltd. v. Camper & Nicholsons USA, Inc.*, 2008 WL 351660, at *3 (S.D.N.Y. 2008) (internal citations omitted) (holding that the defendants established that the action could have been brought in the transferee district as the plaintiff could have obtained diversity jurisdiction, subject matter jurisdiction, and met venue requirements over the defendants); *see also Schechter v. Tauck Tours, Inc.*, 17 F.Supp.2d 255, 258 (S.D.N.Y. 1998) (holding that the transferee court must have had subject matter jurisdiction and personal jurisdiction over the defendants).

---

[14] Defendant did not respond to plaintiff's argument.

In a recent decision, the District Court for the Southern District of Illinois discussed the issue of whether or not underlying plaintiffs are necessary parties in a declaratory action between an insured and insurer. *Georgia-Pac. Corp. v. Sentry Select Ins. Co.*, 2006 WL 1525678 (S.D. Ill. 2006). The court noted that the Seventh Circuit and Supreme Court had not ruled on the issue. *Georgia-Pac. Corp.*, 2006 WL 152678, at *3. The court discussed the distinct difference between lawsuits commenced by insureds in favor of a duty to defend and actions brought by insurers against insureds regarding the obligation to provide coverage. *Georgia-Pac. Corp.*, 2006 WL 152678, at *3 (citing *Fathers of the Order of Mount Carmel, Inc. v. Nat'l Ben Franklin Ins. Co. of Ill.*, 697 F.Supp. 971 (N.D. Ill. 1997)) (reasoning that if the declaratory judgment action had been filed by the insured against the insurer, the interests of the injured party would be adequately served); *see also Flashner Med. P'ship v. Mktg. Mgmt., Inc.*, 189 Ill.App.3d 45, 54 (1st Dist. 1989) (holding that the tort claimants were necessary parties because they had a substantial interest in the outcome of the litigation as "a declaration of non-coverage would eliminate a source of funds"). The court analyzed Illinois state and federal caselaw and concluded that:

> if [a] declaratory judgment action is filed by the insurer or involves a determination of insurance coverage or both, then the underlying claimant is considered a necessary party.

*Georgia-Pac.*, 2006 WL 1525678, at * 6.

In the case at hand, plaintiff is seeking a declaration that plaintiff has no duty to defend or indemnify defendant in the underlying action. Based upon the aforementioned, Hoadley would have been a necessary party in any declaratory judgment action originally commenced by plaintiff in Illinois. It is undisputed that the underlying automobile accident occurred in New

York.   The record establishes that in August 2004, Hoadley was a resident of New York and previously worked as a landscaper in New York.[15]  On October 4, 2005, plaintiff commenced the within action.  Although plaintiff argues that, "there does not appear to be any basis upon which Hoadley would be subject to personal jurisdiction in Illinois", the record is devoid of any evidence which would allow this Court to engage in any meaningful jurisdictional analysis. The record contains no evidence regarding Hoadley's residency from August 2004 until October 2005.   However, despite this lack of evidence, defendant failed to address or respond to this portion of plaintiff's argument.  Accordingly, the Court finds that defendant has not sustained the burden of establishing that the within action "might have been brought" in the Northern District of Illinois in the first instance.

**B.     Interests of Justice and Convenience of Parties and Witnesses**

Even assuming that plaintiff could have originally commenced this action in the Northern District of Illinois, defendant must still prove that the "convenience of parties and witnesses and the interest of justice" warrants a transfer to another venue.  *Oriska Ins. Co.*, 2005 WL 894912, at *4.  The relevant factors to the "balance of convenience" analysis are:

> (1) the convenience to witnesses; (2) the relative ease of access to sources of proof; (3) the locus of operative facts; (4) plaintiff's choice of forum; (5) the relative familiarity of the court with the applicable law; (6) the convenience and relative means of the parties; and (7) the availability of process to compel attendance of unwilling witnesses.

*Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (internal citations omitted).

**1.        Convenience of witnesses**

---

[15] This evidence is contained in Hoadley's verified bill of particulars dated August 2004.

The convenience of party and nonparty witnesses may be the single most important factor in the analysis of forum. *Abovepeer, Inc. v. Recording Indus. Ass'n of Am., Inc*., 166 F.Supp.2d 655, 659 (N.D.N.Y. 1991) (quoting *800-Flowers v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 134 (S.D.N.Y. 1994).  In this Circuit, a party moving under § 1404(a) is required to "clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover".  *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 987 (E.D.N.Y. 1991) (holding that the movant "must support the transfer application with an affidavit containing detailed factual statements relevant to the factors [to be considered by the court in its transfer decision], including the potential principal witnesses expected to be called and a general statement of the substance of their testimony").

In the case at hand, as support for the motion, defendant submitted the affidavit of Janice Richards, Vice President and Claims Manager of the Corporate Insurance and Risk Department of Bank One.  Additional affidavits from potential party and non-party witnesses were annexed as exhibits to defendant's reply brief .  It must be noted that the Court would be within its discretion to disregard the affidavits and arguments submitted with defendant's reply papers. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) (holding that arguments cannot be made for the first time in reply papers); *see also Matera v. Native Eyewear, Inc.,* 355 F.Supp.2d 680, 687 (E.D.N.Y. 2005) ("[t]he defendant failed to submit any affidavits in support of its motion [to change venue] . . . the Court will not consider the affidavits submitted in with its reply brief.").   However, even considering these affidavits, the Court concludes that this factor does not weigh in favor of a transfer of venue.

12

Defendant argues that the proposed witnesses will testify regarding the negotiation and procurement of the policy.  The proposed witnesses reside in Illinois, Florida and New York. Defendant further argues, "[m]ost, if not all of Bank One's pertinent documents and witnesses are located in Illinois".  Plaintiff disagrees with defendant as to the relevance of testimony regarding the negotiation and procurement of the policy.  Plaintiff contends that the majority of witnesses on the issue of notice reside or work in New York.  Without resolving the issue of which testimony is relevant, the Court finds that this factor does not weigh in favor of either jurisdiction. *See Am. Steamship Owners Mut. Prot. and Indem. Ass'n Inc. v. LaFarge N. Am., Inc.*, 474 F.Supp.2d 474, 484 (S.D.N.Y. 2007) (holding that defendant failed to persuade the court that the proposed testimony of witnesses was relevant).

### 2.     Access to proof

Without identifying specific evidence or documentation, defendant argues that "pertinent documents" are located in Illinois.  Plaintiff states that relevant evidence is located in New York.  As neither party has asserted that the documents cannot be transferred from one district to another, the districts are equally convenient.  *See Great W. Cas. Co. v. Dekeyser Express, Inc*., 2005 WL 2861074, at *4 (N.D. Ill. 2005).  Moreover, the location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.  *See Aerotel Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 197 (S.D.N.Y. 2000).

### 3.     The locus of operative facts

Defendant argues that this matter involves the interpretation of notice endorsements and thus, the operative facts are the negotiation, procurement and delivery of the policy.  Defendant argues that these facts favor a transfer to Illinois.  Plaintiff argues that the operative facts are those which would be probative of defendant's notice to plaintiff.   Plaintiff claims that these events took place in New York.

In a declaratory judgment action where the central legal and factual dispute concerns notice, the court will consider the "events relating to notice" including:  the events that triggered the insured's duty to provide notice; where notice was sent; and where the notice was received.   *See Employers Ins. of Wausau*, 2008 WL 4443899, at *3 (S.D.N.Y. 2008).

In this action, the parties do not dispute the existence of a valid contract of insurance. Plaintiff commenced this action based on plaintiff's interpretation of the notice provisions of the contract.  The underlying accident occurred in New York and the Hoadley action was filed in New York.  Defendant's notice of the accident and lawsuit was sent from Illinois to AIG in New York.  The correspondence informing defendant of plaintiff's decision to deny coverage was sent from New York to Illinois.   Therefore, the facts most relevant to the issues related to the dispute are located in New York.   This factor favors retaining jurisdiction in plaintiff's chosen forum.

### 4.    Plaintiff's choice of forum

In this case, it is undisputed that plaintiff's original choice of forum is proper.  A "plaintiff's choice of forum is given significant weight and will not be disturbed, unless the balance of factors weigh strongly in favor" of the defendant.  *800-Flowers, Inc.*, 860 F.Supp. at 135.  A corporation may be said to reside where its principal place of business is located. *Elam*

*Electroluminescent Indus., Ltd. v. Rhode Island Novelty, Inc.*, 2005 WL 1538211, at *1, n.1 (S.D.N.Y. 2005) (citing 28 U.S.C. § 1391(b)).  However, "[e]ven when the plaintiff is not a resident of a chosen forum, his choice is still entitled to significant weight".  *Pinto v. Doskocil*, 1991 WL 207523, at *9 (S.D.N.Y. 1991) (quoting *Motown Record Corp. v. Mary Jane Girls, Inc.*, 660 F.Supp. 174, 175 (S.D.N.Y. 1987).

In the case at hand, plaintiff alleges that its principal place of business is New York.[16] Defendant alleges that plaintiff's principle place of business is Illinois.  Even assuming that plaintiff did not file where plaintiff was incorporated or where plaintiff's principal place of business was located, as stated previously, the operative facts of the within action are linked to New York.  *See Lyons & Co., Ltd. v. Republic of Tea, Inc.*, 892 F.Supp. 486, 493 (S.D.N.Y. 1995).  Therefore, plaintiff's original choice of forum weighs in favor of retaining jurisdiction in New York.

### 5.      Familiarity with applicable law

In a motion to transfer pursuant to § 1404(a), the 'governing law' factor is to be accorded little weight because federal courts are deemed capable of applying the substantive law of other states.  *See Vassallo v. Niedermeyer*, 495 F.Supp. 757, 760 (S.D.N.Y. 1980) (internal citation omitted) (holding that the law of another jurisdiction is a factor accorded little weight on a motion to transfer, especially in an instance such as this where no complex questions of foreign law are involved).  As the Court will discuss *infra*, New York law will apply to the within action.   Therefore, this factor weighs against the transfer of venue.

### 6.      Means of parties and availability of process

---

[16] The record does not contain an affidavit from any person with knowledge or any other credible evidence to support this allegation.

Defendant does not claim that the availability of process to compel the attendance of witnesses is a significant factor and further asserts that, "[t]he relative means of the parties is a non-factor".

After considering all relevant factors, the Court concludes that defendants have failed to make a clear and convincing showing that the balance of convenience favors transfer of venue to the Northern District of Illinois. Accordingly, venue is proper in New York and based upon the aforementioned analysis, this Court declines to transfer the matter to Illinois.

## II.        Defendant's Motion for Summary Judgment

Plaintiff argues that there is no genuine issue of material fact that precludes summary judgment in favor of plaintiff on the First and Second causes of action.  Plaintiff claims that defendant's failure to provide timely notice of the underlying accident and suit was a breach of conditions precedent to coverage.  Defendant claims that notice to plaintiff following the reinstatement of the Hoadley action by the Appellate Division was justified and complied with defendant's obligations under the policy.[17]

## A.        Choice of Law

As a preliminary matter, it is necessary to determine the substantive law to be applied to the plaintiff's claims. *Interstate Foods, Inc. v. Lehmann*, 2008 WL 4443850, at *2 (S.D.N.Y. 2008).  Under New York choice-of-law rules, the first step of the analysis is to determine whether there is a substantive conflict between the laws of the relevant choices. *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F.Supp.2d 163, 191 (S.D.N.Y. 2006).  In the absence of substantive difference, a New York court will dispense

---

[17] Defendant did not object to plaintiff's request for summary judgment claiming that discovery was necessary.  Having received no objection on that basis, the Court deems this matter ripe for adjudication.

with the choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it. *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

### 1.    Material Conflict

An "actual conflict" exists when "the applicable law from each jurisdiction provides different substantive rules. . ." *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331-332 (2d Cir. 2005) (citing *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)). The differences must be "relevant" to the issue at hand and must have a "significant possible effect on the outcome of the trial". *Id.* (quoting *Tronlone v. Lac d'Amiante Du Quebec, Ltee,* 297 A.D.2d 528 (1st Dep't 2002)).

Under New York and Illinois laws, when an insurance policy contains a condition precedent to coverage that the insured provide prompt notice of a claim or suit, the insured must comply with that condition in a timely manner. *See Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp.,* 31 N.Y.2d 436, 440-43 (1972); *see also AAA Disposal Systems, Inc. v. Aetna Cas. and Sur. Co.,* 355 Ill.App.3d 275, 283 (2d Dist. 2005) (holding that a notice provision is a valid condition precedent to coverage and not a mere technical requirement that an insured may overlook or ignore with impunity).

Under New York law, an insurer need not prove prejudice before it can assert the defense of noncompliance with notice provisions. *Int'l Bus. Machines Corp.*, 90 N.Y.2d at 440; *see also Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 79 N.Y.2d 576 (1992); *see also Utica Mut. Ins. v. Fireman's Fund Ins. Co.*, 748 F.2d 119, 121 (2d Cir. 1984) (holding that late notice is a complete defense for a defendant regardless of whether the insurer was prejudiced). Failure to

provide reasonable notice provides "a complete defense to coverage, regardless of whether the carrier was prejudiced by the late notice. *Green Door Realty v. TIG Ins. Co.*, 329 F.3d 282, 287 (2d Cir. 2003) (citing *Am. Home Assurance Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 440 (1997)).

Under Illinois law, an insurer does not have to prove that it was prejudiced by an insured's breach of the notice clause in a policy to be relieved of its duty to pay. *AAA Disposal Systems, Inc.*, 355 Ill.App.3d at 283 (internal citation omitted).   However, the presence or absence of prejudice to the insurer is one factor to consider when determining whether a policyholder has fulfilled any policy condition requiring reasonable notice. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.,* 222 Ill.2d 303, 317 (2006) (holding that prejudice to the insurer should be considered although lack of prejudice will not excuse a delay in notice that is otherwise unreasonable).   When reasonableness of notice is an issue, prejudice to the insurer remains a factor to consider when determining whether a policyholder has fulfilled any policy condition. *Keystone Consol. Indus., Inc. v. Employers Ins. Co. of Wausau*, 470 F.Supp.2d 873, 883 (C.D. Ill. 2007).

With respect to the issues at hand, the Court discerns a material difference in the applicable laws of New York and Illinois.  In opposition to plaintiff's motion for summary judgment, defendant has argued that notice to plaintiff was reasonable.  If Illinois law applied, a factual dispute over whether or not plaintiff suffered prejudice as a result of the late notice, would preclude an award of summary judgment.  *See Keystone*, 370 F.Supp.2d at 883.  Conversely, under New York law, prejudice is not an element of the late notice defense.  *Olin Corp. v. Certain Underwriters at Lloyd's London*, 468 F.3d 120, 132 (2d Cir. 2006).   Clearly, the issue of whether or not plaintiff suffered prejudice could affect the outcome of the within

18

action.  Having determined that a material conflict exists, the Court must engage in a choice of law analysis.

### 2.       New York Choice of Law Analysis

Plaintiff contends that New York law is applicable because New York has the "most significant relationship" to the issues in dispute.   Defendant claims that under New York choice of law rules, Illinois law will apply to the issues at hand.

In a diversity action, the court applies the choice of law rules of New York, the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006).  In contract actions,  New York courts will apply "the law of the place which has the most significant contacts with the matter in dispute".  *See Auten v. Auten*, 308 N.Y. 155, 160 (1954) (internal quotation marks omitted).  Courts construing similar automobile insurance policies have considered a number of factors in determining which law to apply including:

> (1)  the location of the insured risk; (2) residency of the insured; (3) the insurer's place of business; (4) where the policy was issued and delivered; (5) where the issuing broker or agent was located; (6) where premiums were paid; and (7) the residence of the parties.

*See Vesta Fire Ins. Corp. v. Seymour*, 1996 WL 1057158, at *3 (E.D.N.Y. 1996) (internal citations omitted).   Moreover, courts have held that "an action requesting the determination of an insurer's duties respecting events that took place in New York is governed by New York law".  *New York State Ins. Fund v. Mount Vernon Fire Ins. Co.*, 2005 WL 82036, at *3, n.1 (S.D.N.Y. 2005) (quoting *U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, Tsvi*, 2004 WL 2191051, at *4 (S.D.N.Y. 2004) (internal citation omitted) (holding that if "the underlying incident took place in New York, New York law applies to [that] action").

19

In this case, the underlying automobile accident occurred in New York and the underlying lawsuit is venued in New York.  At the relevant period, the operator of the subject vehicle, the lessee of the subject vehicle and the passenger/injured party were New York residents.  Defendant's application for insurance was received in New York and the lead underwriter for the policy was located in New York.  Defendant's correspondence with notice of the occurrence and the Hoadley action was forwarded to New York and the disclaimer letter was sent from New York.  Although defendant's broker was located in Illinois and premiums were paid in Illinois, the Court finds that New York has the more significant interest.

Defendant argues that, "the fact that the vehicle involved in the underlying accident was located in New York is merely a coincidence".  The Court disagrees.  The lessees of the vehicle (the Blairs) were New York residents.  The lease was assigned to defendant by Fox Toyota Subaru, located in Auburn, New York.  The fact that the vehicle would be operated in New York is clearly not coincidental.  Indeed, the policy covered risks that were not confined to a single location.  Therefore, the Court is free to disregard the location of the insured risk in the choice-of-law analysis.  *See Maryland v. Cont'l Cas. Co.*, 332 F.3d 145, 153 (2d Cir. 2003).  Accordingly, the Court finds that New York has a strong interest in the case and concludes that New York law governs the determination of the responsibilities under the insurance policy.

**B.    Summary Judgment Standard**

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant

20

has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See id.* If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id.*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir.1994). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen 'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

### 1.      Defendant's Notice of the Claim

Under New York law, compliance with the notice provisions of an insurance contract is a condition precedent to an insurer's liability. *Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 438 (2d Cir. 1995); *see also Green Door Realty Corp.*, 329 F.3d at 287. The requirement that notice of an occurrence or claim be given "as soon as practicable," is "a standard provision in liability policies that has been interpreted to require notice within a reasonable time under the circumstances". *Travelers Ins. Co. v. Volmar Const. Co., Inc.*, 300 A.D.2d 40, 43 (1st Dep't 2002); *see also Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 723 (2d Cir. 1992) (internal citations omitted).

The reasonableness of the insured's belief generally remains a question of fact for the jury.  *See Hudson City Sch. Dist. v. Utica Mut. Ins. Co.*, 241 A.D.2d 641, 642 (3d Dep't 1997).  However, in the absence of an excuse or mitigating factors, the issue is one for the court. *See Olin Corp. v. Ins. Co. of N. Am.*, 743 F.Supp. 1044, 1053 (S.D.N.Y. 1990), *affd.* 929 F.2d 62 (2d Cir.1991).  New York courts have held that the question of whether notice was given within a reasonable time may be determined as a matter of law when: (1) the facts bearing on the delay in providing notice are not in dispute; and (2) the insured has not offered a valid excuse for the delay.  *State of N.Y. v. Blank*, 27 F.3d 783, 795 (2d Cir. 1994).

An insured has the burden of proving reasonableness of delayed notice and must exercise reasonable care and diligence and keep itself informed of accidents out of which claims for damages may arise. *Sec. Mut. Ins. Co. of N.Y.,* 31 N.Y.2d at 440-41; *see also Am. Ins. Co.*, 56 F.3d at 438.   A good-faith belief by the insured that an incident does not trigger coverage under an insurance policy "may excuse or explain a seeming failure to give timely notice". *Green Door Realty Corp.*, 329 F.3d at 287 (holding that it may be relevant on the issue of reasonableness, whether and to what extent, the insured has inquired into the circumstances of the accident or occurrence).  Although an insured may delay notice of an occurrence based on "a good faith and reasonable belief that no liability covered by the policy will result", the insured must give notice of "an unreasonable-even sanctionable-assertion of liability".  *City of Utica, N.Y. v. Genesee Mngt., Inc*., 934 F.Supp. 510, 520-521 (N.D.N.Y. 1996) (quoting *Am. Ins. Co.*, 56 F.3d at 439).

Plaintiff argues that this exception applies only to "a narrow set of situations where the insured . . . believes a claim will not be asserted against it".  The Court disagrees with plaintiff's

interpretation and finds that the doctrine of excuse, when reasonable, may also excuse a delay in notifying an insurer of a potential claim. *See Crucible Materials Corp. v. Aetna Cas. & Sur. Co.*, 228 F.Supp.2d 182, 196 (N.D.N.Y. 2001).  The Court recognizes that the Second Circuit previously addressed this issue and held that the doctrine of excuse did not apply to late notice of claim issues.  *Am. Ins. Co. v. Fairchild Indus., Inc*., 56 F.3d 435 (2d Cir. 1995).  However, the Third Department rejected the Second Circuit's interpretation of New York law and the Circuit's distinction between late notice of a claim and late notice of an occurrence. *Reynolds Metal Co. v. Aetna Casualty and Surety Co.*, 259 A.D.2d 195, 201 (3d Dep't 1999).  The court held, "we perceive no reason why a failure to give a timely notice of claim should not be excused by an insured's good faith belief in non-liability or noncoverage". *Id*.   In *Crucible*, the District Court for the Northern District of New York, in turn, relied upon the interpretation of New York law by the Third Department.  The court held, "this court follows the precedent established in *Reynolds Metal* since it reflects the current state of New York law as interpreted by a New York court".  *Crucible*, 228 F.Supp.2d at 197; see also *Varrichio and Assoc. v. Chicago Ins. Co.*, 2001 WL 1524475, at * (S.D.N.Y. 2001) (recognizing that while the New York State Court of Appeals has not ruled on the issue, lower state courts have expressed disagreement with the approach taken by the Second Circuit).

In determining whether an insured's belief in nonliability is unreasonable as a matter of law, the court should consider, *inter alia*, whether the insured failed to make an adequate inquiry into the injured party's condition to determine its seriousness and whether the insured failed to make a "deliberate determination" in evaluating potential liability.  *See Felix v Pinewood Bldrs., Inc*., 30 A.D.3d 459, 461 (2d Dep't 2006), *see also Long Is. Light. Co. v*

*Allianz Underwriters Ins. Co.*, 24 A.D.3d 172, 173 (1st Dep't 2005), *lv dismissed* 6 N.Y.3d 844 (2006).  Ultimately, the determination turns on whether an "ordinary prudent person could have reasonably believed himself to be immune from potential civil liability under the circumstances".  *Philadelphia Indem. Ins. Co. v. Genesee Valley Improvement Corp.*, 41 A.D.3d 44, 47 (4th Dep't 2007).

Excess policies usually require an assured to give notice of claims "that appear likely to involve the excess".  *Olin Corp.,* 743 F.Supp. at 1054 (holding that the plaintiff's duty to notify each excess insurer accrued when the circumstances known to the plaintiff would have suggested a reasonable possibility of a claim that would trigger that excess insurer's coverage).  Where, as in this case, notice to an excess liability carrier is in issue, the focus is on when the insured reasonably should have known that the claim against it would likely exhaust its primary insurance coverage and trigger its excess coverage and whether any delay between acquiring that knowledge and giving notice to the excess carrier was reasonable under the circumstances.  *Morris Park Contracting Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 33 A.D.3d 763, 765 (2d Dep't 2006).  In *Morris Park*, the insured succeeded in raising a triable issue of fact with regard to the timeliness of notice provided to the insurer.  *Id*.  After receiving the underlying complaint on July 22, 2002, the insured actively investigated the underlying claim.  *Id*.  The insured served discovery demands and first received notice of "the seriousness of the injuries" with the service of the bill of particulars on January 22, 2003.  *Id*. at 766.  Eight days later, the insured notified the insurer of the claim.  *Morris Park*, 33 A.D.3d at 766.   The Appellate Division stated that the obligation to give notice to the insurer was triggered with the combination of the ad damnum figure and evidence regarding the seriousness of the injuries.

24

*Id*. at 765.  Therefore, the Court held that the insured's delay was reasonably based upon its initial good-faith belief that the excess insurance would not be triggered.  *Id*. at 766-767.

Courts have rejected the reasonableness argument where an insured offers no evidence that the timing of its notice was the result of a deliberate determination that it was not responsible for the damages.  *See Long Is. Lighting Co.*, 24 A.D.3d at 173.  When considering whether a court may decide notice to an excess insurer was reasonable as a matter of law, the various intermediate appellate courts of New York apply the reasonableness and good faith standards enunciated by the Court of Appeals.  *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 240 (3d Cir. 2007) (holding that a federal court applying these legal standards in the context of Fed. R. Civ. P. 56, must determine whether the issue of fact is "genuine", so as to require a jury trial). While New York courts recognize the need to give an excess insurer notice of a possible claim implicating its policy in a timely manner in order to ensure its participation in settlement discussions, among other things, that obligation does not attach until a fact finder could conclude that an insured should have had a reasonable, good faith belief that the policy would be triggered.  *Id*. at 241.

In this case, defendant seeks to excuse the delay in notifying plaintiff arguing that it was reasonable for defendant to believe that there was no potential liability in the Hoadley action. Defendant claims that the policy was not "reasonably likely" to be implicated until the Appellate Division reinstated the lawsuit and once defendant received notice of the reinstatement, "[defendant] notified [plaintiff] of the lawsuit".

In this case, even assuming that defendant reasonably believed that the policy would not be implicated <u>after</u> the lower court dismissed the action, the Court finds that defendant's delay

25

in notifying plaintiff prior to the dismissal and after the reinstatement of the case was unreasonable under the circumstances.  In examining defendant's delay, the Court notes that there are two critical time periods for which defendant has not attempted to explain.  First, defendant has not addressed the five month delay between the time defendant first became aware of the accident and lawsuit (March 2004) and the date of dismissal of the Hoadley action by the lower court (August 2004).  *See Temple Const. Corp. v. Sirius Am. Ins. Co.*, 40 A.D.3d 1109, 1111 (2d Dep't 2007) (holding that a 5-month delay in notifying the insurer of the occurrence was unreasonable as a matter of law); *see also Deso v. London & Lancashire Indem. Co. of Am.*, 3 N.Y.2d 127, 130 (having found no mitigating circumstances, the Court held that a delay of 51 days was unreasonable as a matter of law).

Second, defendant does not explain the delay in providing notice to plaintiff after the underlying action was reinstated.  Over two months elapsed between the time defendant became aware that the Hoadley action was reinstated by the Appellate Division (March 2005) and when defendant notified plaintiff of the Hoadley action (June 2005).  *See New York v. Ludlow's Sanitary Landfill, Inc.*, 50 F.Supp.2d 135, 140 (N.D.N.Y. 1999) (citing cases) (holding that delays for one or two months are routinely held "unreasonable "); *see also Am. Home Assurance Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993) (collecting New York cases holding delays ranging from ten to fifty-three days to be unreasonable), *cert. denied*, 508 U.S. 973 (1993).

Defendant argues that, "the lawsuit was dismissed on the merits by summary judgment shortly after it was served".  Defendant also claims that from August 2004 until April 2005, "there was no action pending against Banc One".  The record establishes that from April 2004

26

until May 2005, John D. Morio, an attorney with Wilson Elser, prepared status reports regarding the Hoadley action.  The reports were addressed to Paige-Ruane in Virginia and were copied to Mildred R. Jackson, an employee of Bank One Management Corp., in Illinois.  After the Hoadley action was served and prior to the award of summary judgment by the lower court, Wilson Elser forwarded three status reports with an analysis of liability and damages.  After the lawsuit was dismissed, defendant continued to receive reports from Wilson Elser with updates regarding the Hoadley action.  In October 2004, Mr. Morio advised that defense counsel "anticipates Justice Corning's Decision of August 16, 2004 will be appealed by the plaintiff".  Moreover, in March 2005, Mr. Morio advised that during oral argument, the Appellate Division judges "immediately expressed sympathy with the plaintiff appellant" and that it was "clear that [the judges] did not agree with [defense counsel's] arguments".  Finally, the record establishes that on March 24, 2005, defendant was advised that the lower court's decision had been overturned by the Appellate Division.   Based upon Wilson Elser's reports and defendant's continued investigation in the Hoadley action, defendant's delay in notifying plaintiff was unreasonable as a matter of law.

Defendant does not argue that defendant reasonably believed that the Hoadley action would not trigger excess coverage.  However, the Court is compelled to address this issue as plaintiff is seeking a judgment that could eliminate a source of funds for Hoadley in the underlying action.  Upon review of the record, the Court finds that defendant should have been aware of the seriousness of Hoadley's allegations in the underlying lawsuit and the possible implication of the excess policy.  In Hoadley's complaint, it was alleged that, "[p]laintiff suffered catastrophic injuries in that he was rendered a quadriplegic for which he will require

lifelong medical care and treatment and will suffer future loss of earnings". In 2002, when Mackenzie Hughes was initially retained, State Farm had already tendered the entire $100,000 liability limits available under the Blairs' policy. In Wilson Elser's April 2004 report, counsel indicated that "liability in this action is unfavorable" and that the "insured driver was apparently intoxicated" and "traveling too fast". In the April 2004 report, Mr. Morio also advised that, "plaintiff was rendered a quadriplegic, so the damages should be considered extensive" and that "there is no excess or umbrella coverage through [State Farm]". In August 2004, Hoadley served a verified bill of particulars alleging the following injuries: ". . . C5-C6 spinal cord injury resulting in tetraplegia which is permanent". Hoadley also alleged that he was confined to a wheel chair as a result of the accident. In August 2004, Hoadley also served discovery responses which included copies of medical records.

All of Wilson Elser's reports were addressed to Mildred Jackson. Ms. Jackson prepared an affidavit which was submitted with defendant's reply brief. In that affidavit, Ms. Jackson addressed Wilson Elser's reports but only as the reports related to the issues of liability and the summary judgment motions. Ms. Jackson's affidavit failed to address or mention the portions of the reports that addressed damages or Hoadley's alleged injuries. The documents exchanged during discovery, including Hoadley's bill of particulars, should have provided defendant with a clear picture of the extent of Hoadley's alleged injuries and defendant should have reasonably concluded that the excess policy would likely be implicated. *See U.S. Liab. Ins. Co. v. Winchester Fine Arts Servs., Inc.*, 337 F.Supp.2d 435, 441 (S.D.N.Y. 2004). Moreover, even if defendant argued that there was a reasonable possibility that the Illinois National policy would not be implicated due to the existence of the Sirius policy, defendant offered no evidence that

the timing of its eventual notice to plaintiff was the result of a deliberate determination to that effect. *See Long Is. Lighting Co.*, 24 A.D.3d at 173.

Based upon the aforementioned, the Court holds that defendant has not met its burden of raising a triable question of fact as to whether defendant delay in giving notice of the accident and subsequent lawsuit "was reasonably founded upon a good-faith belief of non-liability".

### 2.    Ambiguity and Waiver

In further opposition to plaintiff's motion, defendant argues that pertinent policy language was ambiguous.  Defendant argues that based upon the policy, defendant was not required to forward a copy of the Hoadley action, "contemporaneous with service, but, instead, when the lawsuit was reinstated by the Appellate Division, and it was clear that the policy was 'reasonably likely' to be implicated".  Defendant claims that ambiguous policy language must be construed against the drafter - in this case, plaintiff.

Generally, where a contested provision of an insurance agreement lacks "a definite and precise meaning", that provision is ambiguous and should be "interpreted against the insurer and in favor of coverage for the insured".  *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 354 (1978).  However, the New York courts have specifically stated that the rule "is not applicable in a contest between two insurance companies".  *U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 573 (2d Cir. 1991) (quoting *Loblaw, Inc. v. Employers' Liab. Assurance Corp.*, 85 A.D.2d 880, 881 (4th Dep't 1981), *aff'd*, 57 N.Y.2d 872 (1982).  The issue of whether a provision in an insurance policy is ambiguous is a question of law for the court to determine, however, a provision in an insurance contract is not ambiguous merely because the parties interpret it differently .  *See Atl. Mut. Ins. Co. v. Terk Techs. Corp.*, 309 A.D.2d 22, 28 (1st

29

Dep't 2003).   The court may consider whether the insureds are "sophisticated

business[people]." *Moshiko Inc. v. Seiger & Smith, Inc.*, 137 A.D.2d 170, 176 (1ˢᵗ Dep't 1988)

In the case at hand, the Court finds no ambiguity in the pertinent provisions of the

policy.  The policy was negotiated by two sophisticated parties and the Court finds no

conceivable basis upon which to conclude that defendant could be confused by the language of

the policy.[18]

Defendant also claims that plaintiff established a course of conduct which constituted a

waiver of the notice conditions in the policy.  The Court similarly finds that this argument lacks

merit.  A waiver is the voluntary abandonment or relinquishment of a known right which must

be proved.  *Jefpaul Garage Corp. v. Presbyterian Hosp.*, 61 N.Y.2d 442, 446 (1984). Waiver

"should not be lightly presumed".  *Enter. Engineering, Inc. v. Hartford Fire Ins. Co.*, 2004 WL

2997857, at *3 (S.D.N.Y. 2004) (citing *Gilbert Frank Corp. v. Fed. Ins. Co.*, 70 N.Y.2d 966,

968 (1988).  In order to establish waiver, an insured must prove that it was "misled or lulled by

the insurer into failing to bring its claim in a timely manner".  *N. Am. Foreign Trading Corp. v.*

*Mitsui Sumitomo Ins. USA, Inc.*, 499 F.Supp.2d 361, 376 (S.D.N.Y. 2007).  The insured must

offer evidence that the insurer engaged in a course of conduct which lulled the insured into

inactivity in the belief that their claim would ultimately be processed, or that they were

"induced by fraud, misrepresentation or deception to refrain from commencing a timely action".

---

[18] The Court also notes that in Ms. Richard's affidavit, Ms. Richard provides statements regarding 14 other claims involving "Banc One's obligation to notify the excess insurer of occurrences and lawsuits was governed by the identical language in both the Policy and [a] previous policy issued by National Union".  This statement was offered in support of the waiver defense, however, the statements conflict with defendant's claim that the pertinent policy language was ambiguous.

*Minichello v. N. Assur. Co. of Am.*, 304 A.D.2d 731, 732 (2d Dep't 2003) (internal citations omitted).

In the case at hand, the only "evidence" submitted in connection with the claim of waiver was the affidavit of Janice Richards.  Ms. Richards does not have personal knowledge of a "course of conduct".  Rather, she has offered statements regarding her opinions based upon a "review of claims".  Thus, defendant has failed to establish a course of conduct or introduce any probative evidence which would serve as a basis for invoking the doctrine of waiver.  *See Herman v. Assoc. Hosp. Servs. of New York*, 27 A.D.2d 545 (2d Dep't 1966).

Accordingly, summary judgment is warranted as defendant has failed to establish any excuse or mitigating factor which would allow a rational factfinder to conclude that defendant's delay in providing notice to plaintiff was reasonable under the circumstances.

**III.     Defendant's Motion for Summary Judgment**

A reference in a brief or affidavit requesting summary judgment has been held to be equivalent to a formal cross-motion.  *See First Investors Corp. v. Liberty Mut. Ins. Co.*, 955 F.Supp. 274, 279 (S.D.N.Y. 1997) *aff'd*, 152 F.3d 162 (2d Cir. 1998) (granting defendant summary judgment by searching the record where defendant "asks this Court to 'dismiss plaintiffs' complaint in its entirety' in its motion papers, [even though] it has not made a formal cross-motion for summary judgment to dismiss the Complaint").  Defendant requests summary judgment dismissing the complaint and declaring that plaintiff must provide excess insurance

coverage pursuant to the policy.  However, based upon the aforementioned analysis,

defendant's motion for summary judgment is denied.[19]

## CONCLUSION

It is therefore,

**ORDERED** that Banc One's motion for a change of venue (Dkt. No. 17) is denied; and

it is further

**ORDERED** that the cross- motion by Illinois National Insurance Company for

summary judgment on plaintiff's first and second claims (Dkt. No. 24) is granted; and it is

further

**DECLARED** that Illinois National Insurance Company does not owe defense and

indemnification to Banc One Acceptance Corporation in the action in New York State Supreme

Court of Cayuga County action, entitled *Robert M. Hoadley v. Banc One Acceptance*

*Corporation, Thomas C. Blair and Bonny J. Blair and Gary M. Clark*; and it is further;

**ORDERED** that Banc One's cross motion for summary judgment (Dkt. No. 35) is

denied.

**IT IS SO ORDERED.**

**DATED: December 29, 2008**
         **Syracuse, N.Y.**

---

[19] The Court received correspondence from defense counsel dated March 11, 2008 wherein counsel advised that the underlying personal injury action was settled following mediation.  Counsel requested that the Court convert defendant's motion from a demand to provide a defense to a liquidated claim for damages, reimbursement of defense costs and indemnification.  Based upon the Court's decision, this request is moot.

Norman A. Mordue
Chief United States District Court Judge